UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM J. HARNACK,

               Plaintiff,

v.

HEALTH RESEARCH INC.,

               Defendant.

**DECISION AND ORDER**
11-CV-518S

## I. INTRODUCTION

In June of 2008, *pro se* Plaintiff William Harnack was discharged by his employer Health Research Institute, Inc. ("Health Research"), which operates Roswell Park Cancer Institute in Buffalo, New York. Harnack contends that his release was the result of unlawful age discrimination, and he therefore brings this suit under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). He also brings two related claims under state law. Presently before this Court is Health Research's motion for summary judgment.

*Pro se* submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal citations and quotations marks omitted.) But even under that standard, for the following reasons, Health Research's motion is granted.

## II. BACKGROUND

A.   Facts[1]

Health Research hired William Harnack on December 23, 2005 for a position entitled "Online Content Coordinator" with Roswell Park's Marketing Department. (Def.'s Stmnt., ¶ 10; Docket No. 28.) He was 52 years old at the time. His "primary responsibilities were to add new content to the website and train website users." (Id., ¶ 43.) Although Harnack contends that this characterization of his duties is "incomplete," as it fails to adequately account for his role "in managing a 3,000-page external site as well as the entire internal site" (Pl.'s Stmnt., ¶ 43; Docket No. 41 ), it appears that Harnack generally agrees with the broad summary of Harnack's duties as supplied by Health Research.

Harnack's job, however, was put indirectly in jeopardy when Dr. Donald Trump was appointed President and Chief Executive Officer at Roswell Park in March of 2007. As Health Research asserts, "Dr. Trump tasked the [Roswell Park] Marketing Department with spearheading the effort to attain national recognition by changing its marketing strategy to a contemporary web-based, multi-media model that would more effectively reach a wider audience in new and more sophisticated ways." (Def.'s Stmnt., ¶ 52.) "Dr. Trump gave Laurel DiBrog, the head of the Marketing Department, specific performance goals," and, to meet those mandates, "the Marketing Department began to assess the capabilities and skill sets that it had in-house at that time." (Id., ¶¶ 53–54.)

---

[1] This Court has accepted facts in each party's statement of undisputed facts (referred to as "Pl.'s Stmnt." and "Def.'s Stmnt." respectively) to the extent that they have not been controverted by the opposing party. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

2

Primarily because Roswell Park's website did not appear prominently in the results of popular search engines like Google, the website was the "first target of the Marketing Department's review." (Id., ¶ 56.)

After undertaking this review, it became clear to Health Research that "the only way the Marketing Department could achieve Dr. Trump's objective was to create an in-house multi-media marketing agency – something that [Roswell Park] had never had before – and to begin using every type of media available (including newly emerging web-based technologies) to promote [Roswell Park]." (Id., ¶ 65.) To meet this goal, Roswell Park determined it needed an "in-house 'web guru' or web marketing manager [] to identify all of the issues plaguing the Roswell Park website, rebuild it entirely with the latest technology, and spearhead the new focus on web-based and social media marketing."

It also determined that Harnack was the not the man for the job. (Id., 73.)

At one point, DiBrog asked Catherine Donnelly, Harnack's direct supervisor, if either she or Harnack had the technological expertise to update the website; Donnelly said they did not, "acknowledg[ing] that neither she nor Plaintiff possessed the sophisticated technological skill set required to handle the high level technological aspects of the website and marketing effort that [Roswell Park] expected to undertake." (Id., ¶ 74.) Thus, "[a]fter extended consideration and assessment . . ., a decision was made to restructure the Marketing Department, eliminate six positions and lay off five individuals whose positions were to be eliminated as part of the restructuring effort." (Id., ¶ 82.) Harnack, 55 years old at this time, was among those released. As Heath

Research claims, "neither the functions of, nor skill set required for, a full-time Online Content Coordinator position were essential to operations." (Id., ¶ 87.)

In the fall of 2008, Health Research hired Michael Gonzalez for the "web guru" position. (Id., ¶ 99.) Gonzalez concluded that "the website was irreparably 'broken' and needed to be completely rebuilt, with an entirely new technology platform." (Id., ¶ 101). He also determined that "he needed assistance in rebuilding the server side of the website" and therefore requested, and was granted, "authorization to create and post a completely new position for a Web Project Coordinator." (Id., ¶ 102.) Health Research filled that position, which "require[d] significant technological expertise and experience in programming and developing the server technology behind the website," in January 2009 by hiring Timothy Graffam. (Id., ¶¶ 103, 106.) Together, these two new employees – who are both younger than Harnack – built the Roswell Park website "from the ground up." (Id., ¶ 107.)

Health Research asserts that since Harnack was discharged, his work has been a very small part of the marketing department's online focus and that in 2009-2010, it was being performed by two "low-level, part time consultants," one of whom was 63 years old at the time he was hired. It further represents that "currently the Marketing Department's Web Content Team is made up of three positions: two Digital Content Coordinators and one Web Editor," all of whom are "responsible for writing and publishing content for [Roswell Park's] digital properties, mobile apps, social media sites, and website." (Id., ¶ 113.)

Harnack did not apply for any of these positions.

4

**B. Procedural History**

Harnack filed a complaint in this Court on June 20, 2011. On September 13, 2011, Health Research filed its answer to Harnack's complaint. After discovery, on January 31, 2013, Heath Research filed this motion for summary judgment. Briefing concluded on March 21, 2013, at which time this Court took the motion under advisement.

## III. DISCUSSION

**A. Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought,

5

there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the employment-discrimination context, courts "must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Id. But summary judgment remains appropriate in discrimination cases, as "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trial – apply no less to discrimination cases than to . . . other areas of litigation." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks omitted); see also Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

**B.    The ADEA & Harnack's claim**

The ADEA makes it unlawful for an employer to take adverse action against an employee because of an employee's age. 29 U.S.C. § 623(a).  To prevail, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL

Financial Services, 557 U.S. 167, 177–78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). In assessing an ADEA claim on a motion for summary judgment, this Court must apply the familiar McDonnell Douglas burden-shifting test. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); see also Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (holding that, even after the Supreme Court's decision in Gross, the McDonnell Douglas burden-shifting framework continues to apply to ADEA claims). Under the test, first, the plaintiff must establish a *prima facie* case by demonstrating that he was (1) within the protected age group; (2) qualified for the position; (3) discharged; and (4) that such discharge occurred under circumstances giving rise to an inference of discrimination. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). This burden is "minimal." Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 128 (2d Cir. 2012) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). Then:

> [if]f the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises. The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for discharging the employee. . . . If the employer articulates a non-discriminatory reason for its employment decision, the presumption of discrimination raised by the *prima facie* case simply drops out of the picture.

Carlton, 202 F.3d at 134–35 (internal citations and quotation marks omitted). "At the final stage, the plaintiff then has 'the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision' – a burden that 'merges with the ultimate burden of persuading the court that []he has been the victim of

7

intentional discrimination.'" Bucalo, 691 F.3d at 129 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

\*\*\*\*

The main dispute between the parties in this case concerns the similarity between Harnack's old position and the new positions created by Health Research after it released Harnack. Harnack contends that the positions are similar and that therefore his younger replacements demonstrate that Health Research fired him because of his age; Health Research maintains that the new positions required a skill set Harnack lacked, and that this was the true reason for his release.

But while Harnack claims that the new "position or positions were the same," he later undermines this argument himself, claiming in his brief, for instance, that he "was never offered training" despite "demonstrat[ing] his ability to learn [web development] technologies." (Pl.'s Br. at 12; Docket No. 41.) Even if Harnack could have easily acquired the skills needed for the new job, it is implicit in his own argument that he did not yet possess them. His direct supervisor expressed a similar belief. As Donnelly recounts in her affidavit, she told DiBrog, in response to DiBrog's inquiry, that neither she nor Harnack had the skill set to fill this new position. (Donnelly Aff., ¶¶ 15–18; Docket No. 32.)[1]

---

[1] Donnelly was not released, but instead changed positions. According to her affidavit,"[i]n or around June 2008, both [her] position as Assistant Director of Public Affairs and Mr. Harnack's position as Online Content Coordinator were eliminated. [She] transitioned to a different position within [Roswell Park] and served as the Integrated Marketing Communications Manager[,] which focused more on special projects than web content management." (Donnelly Aff., ¶¶ 19–20.)

But even assuming that Michael Gonzalez, or any of the new hires for that matter, were simply replacements, Harnack has only established a *prima facie* case, and a reasonable jury would not be able to find that he has met his ultimate burden.

"Generally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination." Carlton, 202 F.3d at 135 (citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313, 116 S. Ct. 1307, 134 L.Ed.2d 433 (1996)). But Health Research offers a legitimate, non-discriminatory reason for discharging Harnack: he did not have the technical expertise to handle the new requirements of the job. Even assuming that Health Research was wrong about this belief, that there is an issue of fact regarding the difference between the new positions and the old, or even that the decision to restructure the marketing department was pretext for releasing him for some other reason, this is insufficient to overcome a motion for summary judgment. Harnack must ultimately establish *"both* that the reason was false, *and* that discrimination was the real reason." St. Mary's, 509 U.S. at 515 (emphasis in original); see also Dieck v. Suffolk Cnty. Vanderbilt Museum, No. 09-CV-2263 JS ETB, 2011 WL 4434066, at *5 (E.D.N.Y. Sept. 22, 2011) (citing Norville v. Staten Isl. Univ. Hosp., 196 F.3d 89, 98 (2d Cir.1999) ("[E]ven if Plaintiff's evidence suggests that Defendants' reason was pretextual, Plaintiff also bears the burden of establishing that the reason as *a pretext for age discrimination."*) (emphasis added). But the only competent evidence that Harnack can present to support his claim that he was fired because of his age is the disparity between him and his "replacement." And, typically "a replacement worker's age, without more, is insufficient to prove age

9

discrimination." Dieck, 2011 WL 4434066 at *5; see Mattera v. JPMorgan Chase Corp., 740 F.Supp.2d 561, 577 (S.D.N.Y. 2010) ("[P]laintiff's sole remaining fact in support of discrimination, namely that he was replaced by a younger worker, cannot defeat a motion for summary judgment.") As then-Chief Judge Larimer has found, "Replacement by a younger person may be enough to satisfy the fourth element of plaintiff's *prima facie* case, but it is not enough to create an issue of fact about whether [Defendant's] proffered reason for [Plaintiff's] termination was pretextual." Wado v. Xerox Corp., 991 F. Supp. 174, 194 (W.D.N.Y. 1998).

This is not to say that such a conclusion is preordained by established case law. The Supreme Court "mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000). In Carlton, the Second Circuit, undertaking this case-by-case approach, determined in that case that questions about the defendant's proffered non-discriminatory reason for the discharge, together with Plaintiff's *prima facie* case, served to defeat defendant's motion for summary judgment. 202 F.3d at 137. But here, the cumulative lack of weight of circumstantial evidence compels a different result. See, e.g., Fagan v. New York State Elec. & Gas Corp., 186 F.3d 127, 135 (2d Cir. 1999) (even viewing evidence as creating an issue of fact on pretext, the plaintiff failed to meet his ultimate burden). Although Harnack does identify several instances that, he argues, demonstrate a culture of age discrimination at Roswell Park, none adds any weight to his claim.

First, Harnack claims that he was repeatedly asked his age by department manager Colleen Karuza during birthday celebrations. Even if this made Harnack uncomfortable, the simple act of asking Harnack his age – especially during an event where age is relevant – does not demonstrate that he discriminated on the basis of it.

Second, Harnack argues that "perhaps the most telling of Ms. DiBrog's underlying feeling regarding older workers is found in an off-the-cuff sarcastic comment to Ben Richey": "Was his brilliance hidden under Cathy's management style or was my basic assumption that he was lazy accurate[?]" Though Harnack tries to characterize this comment as a reflection of age-based animus, there is nothing in the record to support this speculation. And, it should be noted that DiBrog did not say that older employees, as a group, were lazy, only that Harnack was. This does not begin to suggest that Harnack was released because of his age. If anything, it suggests that Harnack's performance was a motivating factor in Health Research's decision to release him. Indeed, "[t[he ADEA does not prevent an employer from discharging an employee who is not performing his job, even if that employee's deficiencies, such as diminished vigor, may be associated with advancing age." Durling v. Uddo & Associates, Inc., No. 91 CIV. 8190 (RLC), 1993 WL 33645, at *3 (S.D.N.Y. Feb. 4, 1993) (citing Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir.1979)).

Harnack also highlights another comment made by DiBrog that, he argues, supports an inference of age-based discrimination. In an email to another Health Research employee, DiBrog wrote that she wants "long-term employees" who were being released to "feel that it is about their skill level and not about the work product

they've contributed while they've been here." But first, Harnack was not a "long-term employee"; he had only been at Roswell Park for a few years. Harnack's own tenure at the company demonstrates that "long-term employee" cannot simply be, as Harnack argues, a euphemism for older employees. And second, if anything, this comment again tends to show that the motivation for the release of these employees was something other than age: whether the real reason was skill level or work product, neither violates the law.

Finally, Harnack alleges that his exclusion from meetings about Roswell Park's "yRoswell" initiative, meant to target a young audience, demonstrates age discrimination. But again, this is simply speculation, there is no evidence tending to show that he was excluded because of his age. As Health Research notes, Donnelly, also in the protected class, was involved, and Harnack admits that "he had enough to do" with his other responsibilities. (Harnack Aff., ¶ 17.)

Accordingly, aside from the fact that younger employees were hired after Harnack was discharged, there is no evidence of age-based discrimination. This proves fatal to his claim, as Harnack "must present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole . . . by discrimination." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997). And in this case the replacement workers' age is insufficient for a fact-finder to "infer that the pretext was 'masking unlawful discrimination.'" Fagan, 186 F.3d at 135 (quoting Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997)); see also e.g., Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir.2001) ("The evidence presented by

[plaintiff] is not enough to permit a jury to find that the real reason he was fired was his age. We have repeatedly held that, in the end this burden rests on the plaintiff, . . . and, as a matter of law, [he] has not met this ultimate burden.").

This conclusion is bolstered by the principle that a claim of pretext for discrimination is "strongly undercut" where the individual who decided to terminate the plaintiff hired the plaintiff in the first place, at a time when he was already in the protected class, and is herself a member of the same protected class. "Under such circumstances, 'it is difficult to impute an invidious motivation.'" Graves v. Deutsche Bank Sec., Inc., No. 07 CIV. 5471 BSJ KNF, 2012 WL 6097712, at *5 (S.D.N.Y. Nov. 30, 2012) (quoting Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)); see also O'Connor v. Viacom Inc./Viacom Int'l Inc., No. 93 Civ. 2399, 1996 WL 194299, at *7 (S.D.N.Y. Apr. 23. 1996) ("[T]he inference of discrimination is much weaker where the plaintiff employee is well within the protected class when first hired."). Here, there is no dispute that Harnack was (1) hired while he was in the protected class, (2) by a member of the protected class – DiBorg – and, less than three years later, (3) released by DiBorg.

Harnack's ADEA claim is therefore dismissed.

C.  **Harnack's state law claims**

Harnack also brings claims under the New York State's Human Rights Law, N.Y. Executive Law § 290, *et seq.* ("NYSHRL"), and for breach of an implied contract. But Harnack failed to respond to Health Research's arguments urging dismissal of these claims. That constitutes waiver. See, e.g., Taylor v. City of New York, 269 F. Supp. 2d

68, 75 (E.D.N.Y. 2003); see also Triestman, 470 F.3d at 477 (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") (citation and quotation marks omitted).

Further, there is no dispute that Harnack was an at-will employee. (See Harnack Dep. Tr. At 26–28; Docket No. 31-2.) As noted, Harnack offers no argument in this respect. Accordingly, that claim will be dismissed.

Moreover, NYSHRL claims are analyzed under the same standard as ADEA claims. See, e.g., AbduBrisson, 239 F.3d at 466. Thus, for the reasons articulated above, Harnack's NYSHRL claim is also dismissed.

## IV. CONCLUSION

Harnack has failed to meet his burden, which requires him to raise a genuine issue of material fact indicating that was discharged because of his age. His ADEA and NYSHRL claims will therefore be dismissed. Harnack also raised no argument suggesting that he had, and Health Research breached, an implied contract. Thus, this, his final claim, is also dismissed. Health Research's motion for summary judgment is accordingly granted in full.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 26) is GRANTED.

FURTHER, that the Clerk of the Court shall close this case.


Dated: November 3, 2013
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court